**Nos. 22-1417, 22-1484**

# In the United States Court of Appeals
## FOR THE THIRD CIRCUIT

———————

LONTEX CORP,

PLAINTIFF-APPELLEE/CROSS-APPELLANT,

*v.*

NIKE INC,

DEFENDANT-APPELLANT/CROSS-APPELLEE

———————

On Appeal From The United States District Court
For The Eastern District Of Pennsylvania
Case No. 2:18-cv-5623

———————

## BRIEF FOR PLAINTIFF-APPELLEE/CROSS-APPELLANT LONTEX CORP

———————

BEN L. WAGNER (CA 243594)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
11682 El Camino Real, Ste. 400
San Diego, CA 92130
(858) 509-6000
ben.wagner@troutman.com

CRAIG C. CROCKETT (CA 265161)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3 Embarcadero Ctr., Ste. 800
San Francisco, CA 94111

MISHA TSEYTLIN (WI 1102199)
*Counsel of Record*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe St., Ste. 3900
Chicago, Illinois 60606
(608) 999-1240
misha.tseytlin@troutman.com

MICHAEL A. SCHWARTZ
(PA 60234)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

*Attorneys for Lontex Corp*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee/Cross-Appellant Lontex Corp represents that its parent corporation is Lontex Enterprises, Inc., which in turn has no parent corporation, and that no publicly held corporation owns 10 percent or more of its stock.

*/s/ Misha Tseytlin*

MISHA TSEYTLIN

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 3

   I.  Lontex's Well-Pleaded Allegation That Nike Used Lontex's Registered Mark Word-For-Word Satisfies The Additional Statutory Requirement That Lontex Had To Plead For Its Counterfeiting Allegations ............................................................. 3

  II.  Lontex Is Entitled To Disgorgement Of Nike's Profits ................. 11

      A. The District Court Never Exercised Its Equitable Discretion To Decide Whether To Award Disgorgement .......... 11

      B. Based Upon The Evidence Before The District Court, Lontex Proved That It Is Entitled To Disgorgement, As A Matter Of Law ......................................................................... 14

      C. This Court Should Order That, On Remand, The District Court Award Disgorgement Damages Within the Range That The Parties' Experts Already Calculated ......................... 25

CONCLUSION ...................................................................................... 32

# TABLE OF AUTHORITIES

## Cases

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
166 F.3d 197 (3d Cir. 1999) ............................................................ 21

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000) ............................................................ 19

*Astrazeneca AB v. Dr. Reddy's Labs., Inc.*,
209 F. Supp. 3d 744 (D. Del. 2016) ................................................. 8

*Banjo Buddies, Inc. v. Renosky*,
399 F.3d 168 (3d Cir. 2005) .................................................... *passim*

*Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*,
855 F.3d 163 (3d Cir. 2017) ..................................................... 30, 31

*Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*,
252 U.S. 538 (1920) ....................................................................... 19

*Hayes v. Cmty. Gen. Osteopathic Hosp.*,
940 F.2d 54 (3d Cir. 1991) ............................................................. 13

*Kars 4 Kids v. Am. Can!*,
8 F.4th 209 (3d Cir. 2021) ............................................... 11, 12, 13

*Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*,
No.11-3684, 2016 WL 3545529 (D.N.J. June 29, 2016) ................. 32

*Marshak v. Treadwell*,
595 F.3d 478 (3d Cir. 2009) .................................................... *passim*

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
469 U.S. 189 (1985) ................................................................. 22, 23

*Q-Tips, Inc. v. Johnson & Johnson*,
206 F.2d 144 (3d Cir. 1953) ........................................................... 21

*Quick Technologies, Inc. v. Sage Group PLC*,
313 F.3d 338 (5th Cir. 2002) ......................................................... 29

*Romag Fasteners, Inc. v. Fossil, Inc.*,
140 S. Ct. 1492 (2020) .................................................................. 12

*Safeway Transit LLC v. Discount Party Bus, Inc.*,
954 F.3d 1171 (8th Cir. 2020) ....................................................... 29

*Stone Creek v. Omnia Italian Design, Inc.,*
    808 F. App'x 459 (9th Cir. 2020) ...................................................28

*Tex. Advanced Optoelec. Sols., Inc. v. Renesas Elecs. Am., Inc.,*
    895 F.3d 1304 (Fed. Cir. 2018).............................................11, 12

*Thrive Natural Care v. Thrive Causemetics,*
    No.CV 20-9091, 2021 WL 4813257 (C.D. Cal. Oct. 6, 2021) .........31

*Tiffany & Co. v. Costco Wholesale Corp.,*
    971 F.3d 74 (2d Cir. 2020)..............................................................4

*United States v. Chong Lam,*
    677 F.3d 190 (4th Cir. 2012) ...............................................4, 6, 7

*United States v. Yi,*
    460 F.3d 623 (5th Cir. 2006) ..........................................................4

*Visible Sys. Corp. v. Unisys Corp.,*
    551 F.3d 65 (1st Cir. 2008)............................................................32

*W.E. Bassett Co. v. Revlon, Inc.,*
    435 F.2d 656 (2d Cir. 1970) ...................................................*passim*

*Williamson-Dickie Mfg. v. Davis Mfg.,*
    251 F.2d 924 (3d Cir. 1958)..........................................................21

## Statutes And Rules

15 U.S.C. § 1117 ..............................................................................*passim*

15 U.S.C. § 1127 ..............................................................................*passim*

18 U.S.C. § 2320 .....................................................................................7

Fed. R. Civ. P. 39........................................................................12, 13, 14

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ...............................................5, 6

McCarthy on Trademarks and Unfair
    Competition (5th ed. 2019)......................................................*passim*

*What Is Nike Dri-FIT?*, Nike.com ........................................................10

# INTRODUCTION

This Court's disposition of Lontex's cross-appeal will decide whether large infringers in this Circuit can use word-for-word copies of the registered trademarks of their small competitors, without meaningful accountability or deterrence. Lontex registered the "Cool Compression" trademark with the U.S. Patent and Trademark Office, and then used that trademark to promote its high-performance line of athletic apparel. Thereafter, Nike began using this same "Cool Compression" trademark to promote its high-performance line of athletic apparel. Even after Nike's own lawyer told the company it had to stop using the "Cool Compression" mark, Nike continued to tell its retailers for two years to use the "Cool Compression" mark to promote and sell Nike's products. Yet the compensatory damages that Nike caused Lontex through this misconduct were a meaningless sum to Nike, given that Lontex is a small business, whose profits were only ever an infinitesimal amount compared to Nike's.

The Lanham Act provides two critical tools to deal with just such a rare situation, where the infringer's misconduct is so egregious, but the sum of compensatory damages is comparatively small. First, the

Lanham Act gives trademark holders powerful statutory damages for trademark "counterfeiting," defined as the infringer using a mark that is "identical with, or substantially indistinguishable from, a registered mark," 15 U.S.C. § 1127.  Second, the Lanham Act requires the district court to exercise its equitable judgment to decide whether to award disgorgement of an infringer's profits.  15 U.S.C. § 1117(a).  Here, as Lontex explained in its Cross-Appeal Brief,[1] the district court took both of these tools away from Lontex by wrongly dismissing its counterfeiting allegations at the outset of this case, and then, at the end of the case, not awarding disgorgement, including by improperly declining to exercise its own discretion in light of the jury's mere recommendation.

Nike's defense of the district court's counterfeiting and disgorgement rulings during this cross-appeal is unconvincing.  As to counterfeiting, Nike does not meaningfully engage with the statutory text or Lontex's well-pleaded allegation of Nike's word-for-word use of the registered "Cool Compression" trademark, instead arguing that Lontex also had to allege a heightened form of intent found nowhere in the

---

[1] For purposes of this filing, Lontex refers to the portion of its prior brief addressing its issues on cross-appeal as it "Cross-Appeal Brief" throughout.

Lanham Act's text to plead trademark counterfeiting.  On disgorgement, Nike has no explanation for the district court's repeated statements in its order denying disgorgement that show that the court felt bound by the jury's mere recommendation.  And Nike has no meaningful answer to the overwhelming evidence that Lontex is entitled to disgorgement under *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005), which requires disgorgement of Nike's infringement profits within the band identified by the parties' two experts of between $7.1 million and $96 million in Nike's sales of Cool Compression apparel.

## ARGUMENT

### I.  Lontex's Well-Pleaded Allegation That Nike Used Lontex's Registered Mark Word-For-Word Satisfies The Additional Statutory Requirement That Lontex Had To Plead For Its Counterfeiting Allegations

Lontex's Amended Complaint pleaded a prototypical case of trademark counterfeiting.  Lontex Br.71-74.  To access the Lanham Act's enhanced damages provision, Lontex had to allege that the mark that Nike used without Lontex's consent was a "spurious mark"; that is, "identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  Put another way, the critical difference between trademark infringement and counterfeiting—beyond the

requirement (unquestionably satisfied here) that the mark be registered—is a heightened degree of similarity between the registered trademark and the mark the infringer used. *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 90-93 (2d Cir. 2020); *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012); *United States v. Yi*, 460 F.3d 623, 629 n.4 (5th Cir. 2006); *accord* 4 McCarthy on Trademarks and Unfair Competition § 25:15.50 (5th ed. 2019) ("McCarthy").  Lontex adequately pleaded this heightened similarity as between its registered "Cool Compression" trademark to promote its high-performance athletic garments and Nike's word-for-word use of that same exact trademark to promote its high-performance athletic garments.  Lontex Br.71.

Nike primarily responds by arguing that Lontex failed to plead two additional heightened-intent elements needed to allege trademark counterfeiting: (1) "NIKE *intentionally created* a calculated reproduction of Lontex's mark"; *and* (2) Nike intended "to deceive consumers by passing off its products as genuine Lontex products."  Nike Resp.52 (emphasis added).  But nothing in 15 U.S.C. § 1127's text suggests that Lontex needed to plead these heightened-intent elements.  Notably, the Lanham Act *does* contain certain enhanced-intent requirements for

specific categories of counterfeiting damages, which type of intent Lontex pleaded. To take one example, 15 U.S.C. § 1117(b) provides that a trademark holder is entitled to "treble damages" if the infringer's use of the registered mark was "knowing," *id.*, which Lontex pleaded by alleging that Nike knew of Lontex's "Cool Compression" mark, but continued to use that mark for years anyway, A219-21 ¶¶ 24-27, 32. Further, under 15 U.S.C. § 1117(c), a trademark holder is entitled to a higher amount of statutory damages for counterfeit trademark infringement if it shows that "the use of the counterfeit mark was willful," *id.*, which Lontex pleaded through multiple allegations in its Amended Complaint, including that Nike encouraged its retailers for years to use a word-for-word copy of Lontex's registered trademark. A219-21 ¶¶ 24-27, 32.

While Nike points to Black's Law Dictionary's definition of "spurious" as "[d]eceptively suggesting an erroneous origin; fake," Nike Resp.50 (citing *Spurious*, Black's Law Dictionary (11th ed. 2019)), nothing in that definition suggests Nike's two new elements: that the defendant must have "intentionally created a calculated reproduction" and have the intent to "pass[ ] off its products" as the products of the registered trademark's owner. Nike Resp.52. By far the best reading of

15 U.S.C. § 1127's use of "spurious," consistent with this Black's Law definition, is that the *manner* in which a party "deceptively suggests" an "erroneous origin" is simply the one that 15 U.S.C. § 1127 provides: using, without consent, a mark to sell its products, where that mark is "identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  But to the extent this Court concludes that it should use the Black's Law definition of "spurious" to impose an additional, *objective* pleading burden on a plaintiff pleading a counterfeiting allegation, Lontex satisfied any reasonable pleading burden.  Lontex pleaded that, as an objective matter, Nike's use of "Cool Compression" to promote its line of high-performance athletic apparel "deceptively suggest[ed]," *Spurious*, Black's Law Dictionary, to consumers that Nike "ha[d] acquired the rights to bring [Lontex's] COOL COMPRESSION products in-house," A218-19 ¶¶ 20-23, which is Lontex's core theory of trademark counterfeiting in this case.

The only appellate decision that Nike cites to support its two invented heightened-intent elements, *Chong Lam,* 677 F.3d 190 (4th Cir. 2012), Nike Resp. 51-52, *refutes* Nike's arguments. *Chong Lam* held that it was for a fact-finder (there, the jury) to determine whether the alleged

infringing mark met 15 U.S.C. § 1127's heightened similarity requirement, while explaining that "[a] mark does not have to be an exact replica of a registered trademark to be deemed a counterfeit." 677 F.3d at 199. Then, in rejecting the argument that 15 U.S.C. § 1127 was unconstitutionally vague, *Chong Lam* used the same Black's Law definition of "spurious" as Nike relies upon as its sole textual support, and then explained that "spurious" was not vague precisely because its statutory definition—"'identical with, or substantially indistinguishable from, a registered trademark'"—provided ample guidance as to 15 U.S.C. § 1127's reach. 677 F.3d at 202 (quoting 18 U.S.C. § 2320(f)(1)(A)).

And *Chong Lam* is consistent with 4 McCarthy § 25:10, which notes that "counterfeiting is 'hard core' or 'first degree' trademark infringement," and then explains: "For purposes of civil remedies, the Lanham Act defines a 'counterfeit' as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.' This test of 'identical with, or substantially indistinguishable from' requires a

closer degree of similarity than is required for traditional trademark infringement or unfair competition."" *Id.* (quoting 15 U.S.C. § 1127).[2]

When Nike finally addresses the only textually relevant question—whether its word-for-word use of Lontex's "Cool Compression" registered trademark was "identical with, or substantially indistinguishable from, a registered mark," 15 U.S.C. § 1127—its arguments fail. While Nike touts its addition of Nike Pro before "Cool Compression," Nike Resp.53-55, that provides Nike no support given Lontex's well-pleaded theory of counterfeiting. Lontex's well-pleaded counterfeiting theory is that Nike's use of a word-for-word copy of Lontex's registered "Cool Compression" mark conveyed to "consumers" that Nike *ha[d] acquired the rights to bring [Lontex's] COOL COMPRESSION products in-house*." A218-19 ¶¶ 20-23 (emphasis added). Given this theory, the addition of Nike's

---

[2] Nike's citation of a couple of unpublished district-court decisions that discussed the term "spurious" in dicta, Nike Resp.51-52, offers no basis for adopting its invented heightened-intent elements. None of those cases offer any textual analysis of 15 U.S.C. § 1127, or explain any basis upon which courts could add intent requirements onto counterfeiting claims not already found for the specific damages provision in 15 U.S.C. § 1117(b), (c). And while the *only* published district court case that Nike cites here, Nike Resp.51—*Astrazeneca AB v. Dr. Reddy's Labs., Inc.,* 209 F. Supp. 3d 744, 755 (D. Del. 2016)—appeared to find in dicta a non-statutory intent element of "intentionally use[d] the trademark knowing it was counterfeit or was willfully blind to such use," that seems to duplicate the intent element for treble damages in the counterfeiting context under 15 U.S.C. § 1117(b), and which Lontex adequately pleaded, in any event, as noted above, *supra* pp.4-6.

housemark in front of Lontex's "Cool Compression" trademark *reinforces* Lontex's counterfeiting allegations.  Lontex Br.72-73.  And the fact that Nike decided to promote its use of "Cool Compression" in products through advertisements rather than clothing labels themselves, Nike Resp.57-58, is irrelevant to whether Nike was, in fact, using a word-for-word copy of Lontex's registered trademark "*in connection with* the sale, offering for sale, or distribution of goods," 15 U.S.C. § 1117(b)(1) (emphasis added), in a manner that conveyed that Nike "*ha[d] acquired the rights to bring [Lontex's] COOL COMPRESSION products in-house,*" A218-19 ¶¶ 20-23 (emphasis added).  Thus, it is irrelevant that Nike's infringement did not occur on the products or hangtags, as Nike clearly infringed Lontex's "Cool Compression" trademark "in connection with the sale, offering for sale, or distribution of goods," 15 U.S.C. § 1117(b)(1), the relevant question under the Lanham Act's counterfeiting provision.

A simple hypothetical is instructive, and defeats Nike's effort to change the topic by citing largely unpublished cases involving different counterfeiting theories.  Nike Resp.50-52.  If Nike alleged that a new athletic apparel company was marketing a line of apparel as having "Dri-FIT" technology, it would be no defense to a trademark counterfeiting

allegation that this new company placed its housemark immediately before the Dri-FIT registered trademark in its online advertisements. After all, Nike could correctly point out that this new company's use of the word-for-word Dri-FIT registered trademark indicated to consumers that it had acquired (perhaps through a license or partnership) the right to use Nike's innovative Dri-FIT technology. *What Is Nike Dri-FIT?*, Nike.com ("Nike Dri-FIT technology is an innovative polyester fabric designed to help keep you dry so you can more comfortably work harder, longer. Dri-FIT's unique high-performance microfiber construction supports the body's natural cooling system by wicking away sweat and dispersing it across the fabric's surface to evaporate faster.").[3] Nor would it be "self-defeating" to Nike, Nike Resp.56, if its lawsuit also plausibly alleged that consumers had complained to Nike that this new company's Dri-FIT clothing did not "support[ ] the body's natural cooling system," *What Is Nike Dri-FIT?*, *supra*, as these consumers had regularly enjoyed with Nike's Dri-FIT garments, including because lower quality is a common attribute of counterfeits. Nike would easily survive a motion to dismiss for this hypothetical lawsuit so it could try to prove its

---

[3] Available at https://www.nike.com/help/a/nike-dri-fit.

counterfeiting theory, and Lontex is entitled to the same opportunity here.

## II.    Lontex Is Entitled To Disgorgement Of Nike's Profits

### A.    The District Court Never Exercised Its Equitable Discretion To Decide Whether To Award Disgorgement

As Lontex explained in its Cross-Appeal Brief, the district court acted unlawfully, as a matter of law, when it failed to exercise its statutorily mandated, *independent* judgment when deciding whether to grant Lontex the equitable remedy of disgorgement of profits.  Lontex Br.75-76.  The district court erroneously treated the jury's advisory conclusion as binding, or at least presumptively correct absent clear error, claiming that it did not have the authority to "overturn[ ] a jury's decision to reject disgorgement" and so must rule "consistent with the jury verdict."  Lontex Br.75-76 (citing A21-25).  This was legal error because the district court has the independent duty to rule on the equitable relief of disgorgement.  Lontex Br.76; *Kars 4 Kids v. Am. Can!*, 8 F.4th 209, 217 (3d Cir. 2021); *Tex. Advanced Optoelec. Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1318-19 (Fed. Cir. 2018).

Nike's assertion that the district court did assess whether to award disgorgement independent of the jury's determination is simply wrong.

Nike Resp.30-32.  While the district court briefly discussed the *Banjo Buddies* factors, A21-22, it repeatedly relied on the jury's disgorgement conclusion as binding or at least presumptively correct, considering the *Banjo Buddies* factors only insofar as they might be "inconsistent with the jury finding" and concluding that it had no legal basis to "overturn[ ] a jury's decision to reject disgorgement."  A23.  The district court even couched its analysis of the *Banjo Buddies* factors as seeking to increase "the amount of damages awarded" by the jury, and decided against awarding this equitable relief because of what it reasoned "the jury could have found" and because "[t]he jury in its discretion decided to reject any award for disgorgement."  A22.   At other points, the district court explicitly explained that it only rejected Lontex's disgorgement request "because the jury has already spoken on that issue."  A25.  All of this is inconsistent with both the district court's equitable authority under the Lanham Act, *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020); *Kars 4 Kids*, 8 F.4th at 217; *Tex. Advanced*, 895 F.3d at 1318-19, and the nature of advisory rulings, Fed. R. Civ. P. 39(c)(1).

Nike's claim that the district court was free to "adopt the jury's findings" on disgorgement does not address the legal defect that Lontex

identified. Nike Resp.32-33 (emphasis omitted). While a court may, of course, "accept or reject the findings of an advisory jury," *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 57 (3d Cir. 1991), it cannot do so by simply converting the jury's advisory ruling into either a binding, or presumably binding, decision, A23.

Nike's claim that Lontex forfeited this issue by arguing below that "the district court should submit disgorgement to the jury," and through its proposed jury instructions, Nike Resp.28-29; *see id.* 33-35, is flatly wrong. Lontex urged the district court to submit the disgorgement question to the jury on an "advisory" basis, Fed. R. Civ. P. 39(c)(1), not with consent to have the jury try the issue so it would be binding, i.e., "ha[ve] the same effect as if a jury trial had been a matter of right," Fed. R. Civ. P. 39(c)(2). Lontex never urged the court to abdicate thereafter its duty to consider independently the equitable remedies under the Lanham Act, *Kars 4 Kids*, 8 F.4th at 217. Similarly, Lontex's proposed instructions were worded at times in mandatory language—"You must consider whether NIKE's willful infringement supports disgorging the infringing profits," R.358 at 8—because it wanted the "advisory jury,"

Fed. R. Civ. P. 39(c)(1), to consider the issue, not because it sought to convert that advisory decision into one binding on the district court.

## B. Based Upon The Evidence Before The District Court, Lontex Proved That It Is Entitled To Disgorgement, As A Matter Of Law

The evidence at trial required disgorgement of Nike's profits from using the "Cool Compression" trademark under this Court's decision in *Banjo Buddies*. Lontex Br.79-83. Nike's actions were egregious, using Lontex's "Cool Compression" registered trademark word-for-word, and continuing to exploit that mark for two years in its predominant sales channel—its retail partners—which sells a majority of Nike Pro garments. Lontex Br.17-19, 79-80. Nike did this knowing that it was violating Lontex's rights, both because "Cool Compression" is an obviously protectable, registered trademark and because Nike's own lawyers told it to stop. However, because Nike had infringed the trademark of a much smaller competitor, it decided that any damages Lontex would suffer would be meaningless when compared to its profits. Lontex Br.79-80. Nike's cynical calculus proved correct at trial, when it incurred an insignificant damages judgment for its infringement. Lontex Br.79-80. This is the exact situation where the Lanham Act's provision

for disgorgement of a "defendant's profits," is necessary under "the principles of equity." 15 U.S.C. § 1117(a). Given this confluence of facts, Lontex proved that it is entitled to disgorgement as a matter of law.

Before engaging on the *Banjo Buddies* factors, Nike begins by misstating Lontex's position, claiming that Lontex is asserting that disgorgement is "automatic" or available as "a matter of right," or that "willfulness equals disgorgement." Nike Resp.36, 41. Lontex's point is more modest and specific to the facts of this case: given Nike's particularly egregious brand of willful trademark infringement, *combined with* Nike's massive profits, including from its "Cool Compression" sales, *combined with* the fact that Lontex's compensatory damages are trivially small to Nike, disgorgement is necessary here to achieve deterrence in this case. *See Banjo Buddies*, 399 F.3d at 178; *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664 (2d Cir. 1970); *Marshak v. Treadwell*, 595 F.3d 478, 496 (3d Cir. 2009). Given these particular facts, "would-be infringers would be insufficiently deterred" from replicating Nike's willful wrongdoing absent disgorgement of profits. *Banjo Buddies*, 399 F.3d at 178. Notably, while Nike feigns insult at Lontex's characterization of the damages award as a "meaningless slap on the

wrist" that Nike does not take seriously, Nike then immediately proves it still has not learned its lesson by asserting, incredibly, that "Nike always believed [its infringement of 'Cool Compression'] was a legitimate business activity." Nike Resp.37-38.

Turning to the *Banjo Buddies* factors, Nike's arguments here are wrong in every respect.

<u>Intent To Confuse or Deceive</u> (Factor 1). Nike unquestionably had the intent to confuse or deceive consumers that its products contained "Cool Compression" technology, as identified by Lontex's registered trademark, Lontex Br.19, 39, 80, which is most clearly established by two categories of unrebutted, remarkable evidence. *First*, Nike spent two years after Lontex informed Nike of its registered, "Cool Compression" technology-identifying trademark telling its retail partners over and over (and over) again to use the "Cool Compression" mark to promote and sell competing Nike Pro products. Lontex Br.11. This evidence is devastating to any assertion that Nike did not intend to confuse its customers that its products were Cool Compression, as identified by Lontex's registered mark, given that *most* of Nike's sales of Cool Compression products came through these retailers, and given that these

retailers received *all* of their information on how to name, promote, and sell those products to customers directly from Nike's catalogues and tech sheets.    Lontex Br. 10-16, 17-19.    *Second*, overwhelming evidence established that Nike knew it was infringing Lontex's registered trademark, given that "Cool Compression" is obviously a protectable, registered, and incontestable mark, *and* Nike's own attorneys told Nike to stop infringing Lontex's mark.  Lontex Br. 10-19.

When confronted with these two categories of devastating evidence of its intent to confuse, Nike largely defaults.

In arguing that it lacked intent to confuse, Nike remarkably ignores the evidence of its two-years-long practice of directing its retail partners to promote certain Nike Pro products through Lontex's "Cool Compression" registered trademark.    Nike Br.40.    This point is so devastating to Nike that it is worth repeating: **Nike does not even try to address the fact that it repeatedly (over and over and over again) encouraged its retail partners—who sold the majority of Nike Pro products—to use the "Cool Compression" mark in Nike product names and descriptions, A2322-24, A2336-37, A2418-30, A2439-78, A2482, for two full years after it unquestionably knew**

**about Lontex's "Cool Compression" trademark, A526, A2321-26**. Instead, Nike tries to change the subject, resting on its claim that "not a single NIKE *product*" sold at these retailers had the "Cool Compression" trademark on the product or "any label or hangtag." Nike Br.37. But Nike two spent years providing catalogues and tech sheets to its retailer partners, advising these partners to promote these products as being Cool Compression. Lontex Br.11-19. These were the official, specific instructions from Nike to its retail partners both "designed to increase sell-through," SA149, and directing the retailers how to "name [Nike's] products," A1211. That is why these retailers followed Nike's instructions, using the "Cool Compression" mark to sell many millions of dollars of Nike Pro products in online advertising and in store signage. *See, e.g.*, SA6, SA19, SA24, SA62, SA63, SA66, SA70, SA73, SA109, SA164, A340-41.

Nike also largely ignores the overwhelming evidence that it knowingly continued its infringement of Lontex's clearly protectible trademark after its own attorneys' mandate to stop. While Nike claims that Lontex provides the Court with no "evidentiary citation or support" that Nike *knew* it was violating Lontex's trademark rights, Nike Resp.7,

40-41, ***Nike does not dispute that it continued infringing Lontex's "Cool Compression" mark for two years after its own legal counsel ordered it to stop using the "Cool Compression" mark in any names or descriptions of Nike products. A2321-26.***

Notably, Nike cites no evidence that it rejected its attorneys' advice to stop using Lontex's "Cool Compression" trademark because it actually believed that Lontex's registered "Cool Compression" trademark was not protectible. Nike well-understood that "Cool Compression" is a traditional composite mark that combines unique "inherent features," *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 221 (3d Cir. 2000), to create a definite "commercial impression," *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920), just as its own "Dri-FIT" or "HyperCool." Lontex Br.4, 31, 34. Nike, of course, knew all of this, given that it is basic trademark law on the protectability of composite trademarks. *See* 2 McCarthy § 11:72. As its own senior director explained under oath—and consistent with Nike's own lawyers' directive—that putting "Cool Compression" *together* created a "new thing" that ultimately "bec[ame] a noun in and of itself," just like "Dri-FIT." A2438.

Adequacy Of Other Remedies And The Public Interest (Third and Fifth Factors). As Lontex explained, other remedies are inadequate and the public interest requires disgorgement. Lontex Br.81. The paltry damages that the jury awarded pales in comparison to the many millions of dollars in profits that Nike made from products that it promoted using Lontex's "Cool Compression" mark, *id.*, rendering the damages award wholly insufficient to ensure that Nike and other would-be infringers like it would not repeat Nike's malfeasance. *Id.* Relatedly, the public interest supports "making infringement unprofitable" and disfavors any result that allows an infringer to "be unjustly enriched and other would-be infringers [to] be insufficiently deterred." *Banjo Buddies*, 399 F.3d at 178. Allowing Nike to escape with its profits contradicts these core principles, undermining the protections that the Lanham Act was designed to provide to trademark holders.

Nike is incorrect when it argues that the damages award is sufficient to negate Nike's unjust enrichment *and* to adequately deter it and other similar infringers in the future *and* to compensate Lontex for its harm. Nike Resp.42. Nike's profits from the infringing products at issue in this case so vastly overwhelm the damages amount that this

amount cannot be "a strong enough deterrent" for Nike, specifically, *Bassett*, 435 F.2d at 664, while also leaving all "other would-be infringers . . . insufficiently deterred" by the result, contrary to the express purpose of disgorgement, *Banjo Buddies*, 399 F.3d at 178. Even beyond its deterrence purposes, Lontex did suffer sales losses as a result of Nike's infringement, A528-30, even though such losses were far too small for a massive company like Nike to care about in terms of the money involved.

Nike's attempted reliance on the injunction as negating the possibility of disgorgement is incorrect. *See* Nike Resp.42. The injunction prohibiting Nike from using "Cool Compression" in the future does not negate Nike's *prior* infringement. *Marshak*, 595 F.3d at 496. This Court's precedents conclude only that an injunction can undo the need for disgorgement "where an injunction satisfies the equities of a case, as *for example, where there is a clear showing that no profit was made*," which is inapplicable here, given Nike's vast profits on infringing products. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999) (emphasis added) (quoting *Williamson-Dickie Mfg. v. Davis Mfg.*, 251 F.2d 924, 927 (3d Cir. 1958) (citing *Q-Tips, Inc. v. Johnson & Johnson*, 206 F.2d 144, 148 (3d Cir. 1953) (affirming

injunction without an accounting where the "cost of marketing the defendant's product" showed "defendant had made no profits"))).  And a future-facing injunction cannot remedy Nike's already-successful market flooding, shown by Nike's continued dominance of Google search results for "Cool Compression," with the overwhelming majority of results tied to Nike products.  A768-70, SA170-91.  Thus, the "other remedies" awarded in this case are plainly insufficient to deter Nike or "other would-be infringers" in the future from replicating Nike's conduct, *Banjo Buddies*, 399 F.3d at 175, 178, further supporting disgorgement.

Nike is similarly incorrect that the public interest supports denial of disgorgement here.  Nike Resp.43-44.  Even beyond the fact that Nike was "unjustly enriched," *Banjo Buddies*, 399 F.3d at 178, by using Lontex's trademark to sell many millions of dollars of infringing products, A1806-13, A1972, the public interest favors strong respect for registered and incontestable trademarks like Lontex's "Cool Compression," as "Congress determined that 'a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them,'" *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985), and so disgorgement is necessary to

reflect that congressional intent for "great[ ] protection," *id.*, to deter Nike from repeating its conduct, *Bassett*, 435 F.2d at 664.

Diversion Of Sales And Unreasonable Delay By The Plaintiff (Second and Fourth Factors). While Lontex's sales numbers pale in comparison to a massive corporation like Nike's sales, the evidence at trial established that Lontex's sales declined "sharply" in "almost every sector" and then never recovered after Nike began infringing its "Cool Compression" trademark. Lontex Br.82 (quoting A528-30). As for delay, Lontex quickly demanded Nike cease its infringement but was nevertheless largely driven out of the market by Nike's flooding products. Lontex Br.81-82. Indeed, Lontex contacted Nike shortly after discovering and then confirming Nike's infringement. Lontex Br.82-83.

Nike asserts that there was no evidence that Nike's infringement diverted sales from Lontex. Nike Resp.41. But after Nike began flooding the market with its infringing "Cool Compression" products—i.e., products for which it specifically provided training materials to salespersons using the infringing "Cool Compression" language, A2324-25, A2336-37, A2418-30, A2482—Lontex's sales declined "sharply" across "almost every sector" and never recovered, A528-30. In any event, it is

not necessary for a plaintiff "to establish actual damages to justify the imposition of accounting of profits," as a "show[ing] that an accounting was necessary to deter infringement or that [the defendant] and his associates were unjustly enriched" will suffice. *Marshak*, 595 F.3d at 495. That Lontex's lost sales, and thus compensatory damages, are insignificant compared to Nike's profits from its infringement, is a factor *supporting* disgorgement, as disgorgement supports the "Congressional purpose of making infringement unprofitable," rather than "[a]llowing [the infringer] to keep [ ] the estimated profits of his infringing activities." *Banjo Buddies*, 399 F.3d at 178.

Nor can Nike credibly claim that Lontex delayed in protecting its rights. Nike Resp.42-43. Although Nike asserts that Lontex learned of Nike's infringement in December of 2015 "but did not file suit until December 2018," Nike Resp.42, Lontex investigated Nike's infringing conduct at brick-and-mortar stores immediately after initial discovery and sent a demand/cease-and-desist letter to Nike on April 8, 2016. A508-12, A588-91. Lontex continued to try to resolve Nike's infringement amicably in the interim, dealing with Nike and its representatives well into 2018 before filing this lawsuit. A525-27. Thus, Lontex promptly

"assert[ed] its rights" to the "Cool Compression" trademark, and did not delay at all, reasonably or otherwise. *Banjo Buddies*, 399 F.3d at 175.

**C.    This Court Should Order That, On Remand, The District Court Award Disgorgement Damages Within the Range That The Parties' Experts Already Calculated**

Given that the evidence establishes that Lontex is entitled to disgorgement, as a matter of law, Lontex Br.79-82, this Court should remand with instructions that the district court enter a disgorgement judgment within the range that the parties' competing experts calculated: $7.1 million in profits that Nike's expert calculated/$96 million in profits that Lontex's expert calculated.  Lontex Br.82-83.

Nike's arguments against remand for disgorgement based on the already-submitted expert-witness testimony miss the mark.    Nike Resp.44-48.  While Nike contends that it presented evidence that "raised substantial doubts" about Lontex's calculations of damages, Nike Resp.45, Nike's own expert estimated $7.1 million in profits from sales of infringing items, A1972, and the district court acknowledged that "Nike's profits from selling products that use the words 'cool compression'" dwarfed the damages awarded, A22.  Nike's expert explained that he reviewed Nike's sales for all products that included Lontex's "Cool

Compression" trademark either in online advertising or in-store signage and circulars, including wholesale sales to other retailers, but excluded all sales from "brick and mortar" stores because he incorrectly believed that the "Cool Compression" trademark appeared only on websites. A1948-50, A1958-60, A1970-72.   Nevertheless, even considering this obviously improperly limited universe of infringing sales, Nike's expert concluded that Nike's profits from those goods totaled $7.1 million. A1948-50, A1958-60, A1970-72.  Then he continued to reduce that $7.1 million figure via deductions of various institutional and operational costs Nike maintains, *see, e.g.*, A1964-65, A1971-72, none of which were proper because they were not tied to its production and sales of these products, A1807-08.  Thus, the $7.1 million figure, before reduction for these inapplicable costs, A1807-08, is the most relevant from Nike's expert's testimony.  Nike's reliance on the $800,000 figure that its expert discussed as the "maximum" finds no basis in the record, as that was the expert's assessment of a "reasonable royalty," A1943, A1973, not Nike's *profits*, which is the basis for disgorgement, 15 U.S.C. § 1117(a).

On remand, Lontex would—of course—argue that the $7.1 million figure that Nike's expert calculated is far too small, based upon the

testimony that Lontex's expert offered.    A1800, 1806-13.    Most egregiously, Nike's expert removed all brick-and-mortar sales by Nike's retail partners, A1971, but those sales were all directly related to Nike's directions to use the "Cool Compression" trademark, A1810-13.  Thus, as between the two, the better measure of Nike's profits from infringing products was the almost-$96-million measure Lontex's expert provided, after analyzing wholesale sales, direct sales, and third-party retail sales. A1813.  Regardless, it is the district court's duty to review and weigh the evidence presented to decide whether the $7.1-million assessment or the almost-$96-million assessment, or some amount of ill-gotten sales in-between, is most supported by the record.

Finally, Nike's attempt to divine certain "legal principles" that would prohibit Lontex from recovering even the undercounted $7.1 million that Nike's own expert found for profits based upon certain out-of-circuit—often unpublished—decisions, fails.  *See* Nike Resp.46-48.

Nike's first such "legal principle" relies on an unpublished memorandum disposition from Ninth Circuit as always precluding remand for disgorgement where this would amount to a "windfall," Nike Resp.46, but that is wrong and inapplicable.  In the unpublished decision,

the Ninth Circuit panel simply held that disgorgement would be an improper windfall because it was undisputed that the defendant "did not profit from the infringement," *Stone Creek v. Omnia Italian Design, Inc.*, 808 F. App'x 459, 460-61 (9th Cir. 2020), which is not applicable here, A1970-72; A1806-13.    And beyond that inapplicability, the panel's unpublished decision misreads 15 U.S.C. § 1117(a).  The panel claimed that Section 1117(a) "allow[s] for disgorgement only to the extent it 'constitute[s] compensation and not a penalty,'" implying that disgorgement cannot exceed damages or it would unlawfully constitute a penalty.  *Stone Creek*, 808 F. App'x at 460 (quoting 15 U.S.C. § 1117(a)).  But the plain text of the statute provides that an award of damages or disgorgement should be *deemed* "compensation and not a penalty," 15 U.S.C. § 1117(a), and nowhere curtails the availability of remedies.  After all, the Lanham Act explicitly provides that a "court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount," *id.*, so the statute allows an award above actual damages.  Regardless, there is no such "principle" against a windfall when egregious conduct is at issue

and deterrence is necessary. *Banjo Buddies*, 399 F.3d at 178; *Bassett*, 435 F.2d at 664; *Marshak*, 595 F.3d at 496.

For its second "legal principle," Nikes claims that the Lanham Act prohibits disgorgement "used to penalize a defendant," Nike Resp.46, relying on *Safeway Transit LLC v. Discount Party Bus, Inc.*, 954 F.3d 1171 (8th Cir. 2020). But Lontex does not seek to *punish* Nike, but seeks disgorgement, *inter alia*, to deter Nike from repeating its egregious infringement, and other would-be infringers, which is the typical, wholly appropriate context for this form of equitable relief. *See Banjo Buddies*, 399 F.3d at 178.

Nike's third "legal principle" allegedly precluding disgorgement cites *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 349-50 (5th Cir. 2002), for the proposition that "a markholder is only entitled to those profits attributable to the unlawful use of its mark." Nike Resp.46. As Lontex explained above, any products that Nike promoted as "Cool Compression," including through sales materials directed to its retail partners, is legally attributable to the use of that mark, and so disgorgement of Nike's profits encounters no problem. *Supra* pp.25-27. This Court's recognition that unjust enrichment is a disjunctive basis

from deterrence defeats Nike's assertion that some more causal relationship is required. *Banjo Buddies*, 399 F.3d at 177-78. In any event, Nike ignores that the burden is on the infringer to prove what portion of its profits "may not have been due to use of the infringing mark," and only "profits demonstrably not attributable to infringing use" are excluded. 5 McCarthy § 30:65; *see* 15 U.S.C. § 1117(a) ("[D]efendant must prove all elements of cost or deduction claimed.").

Nike's fourth "legal principle"—contending that Lontex presented no sufficiently grounded calculations of Nike's profits to permit disgorgement, Nike Resp.47-48 (citing *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163 (3d Cir. 2017))—similarly misstates precedent and ignores the evidence below. For disgorgement, although a district court estimating profits must exercise "its discretion . . . within boundaries," the touchstone for this exercise is mere "reasonableness," and a district court's estimation is unreasonable when made in "absence of any evidence in the record of [the defendant's] actual profits for sales of infringing products," relying instead on the defendant's "total sales in the [relevant] industry" "spontaneously reduced . . . by 30% to avoid an excessive award," which is no more than "guesswork." *Covertech*, 855

F.3d at 176-77. But here, as previously explained, *supra* pp.25-27, both Lontex and Nike presented ample evidence of Nike's sales of infringing products as falling somewhere between $7.1 million and almost $96 million, A1806-13, A1972, and it was Nike's burden to prove that any of these sales were "*demonstrably* not attributable to infringing use," 5 McCarthy § 30:65 (emphasis added), which it failed to do.

Finally, Nike's offhand assertion that disgorgement is inconsistent with a reverse-confusion claim, Nike Resp.48, is incorrect and inapposite. Foremost, such inapplicable principle (flatly inconsistent with cases like *Bassett*, 435 F.2d 656) came from circuits overturned by *Romag*, which incorrectly held a narrow form of willfulness was required for disgorgement, and courts in those circuits agree "disgorgement of profits in reverse confusion cases is now possible" post-*Romag*. *Thrive Natural Care v. Thrive Causemetics*, No.CV 20-9091, 2021 WL 4813257, at *5 (C.D. Cal. Oct. 6, 2021). Regardless, Lontex presented claims of both forward and reverse confusion to the jury, *see* A1568-74, and the jury found infringement, A271, so disgorgement is plainly permissible here. And, in any event, the unpublished district court decision Nike cites provides only that disgorgement may be inappropriate in a reverse

confusion case as a proxy to measure a plaintiff's damages because "[r]everse confusion does not lend itself to any automatic assumption that there is an equivalence between defendant's profits and plaintiff's diverted sales." *Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, No.11-3684, 2016 WL 3545529, at \*26 (D.N.J. June 29, 2016) (quoting *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 80-81 (1st Cir. 2008)). Regardless of its usefulness in estimating damages (a disjunctive basis for disgorgement from deterrence), disgorgement remains an effective and necessary tool for deterrence, *Banjo Buddies*, 399 F.3d at 178; *Bassett*, 435 F.2d at 664; *Marshak*, 595 F.3d at 496, as Lontex has argued throughout this case.  Even Nike's cited *Koninkijke* decision analyzed the appropriateness of disgorgement in that reverse-confusion case under the typical *Banjo Buddies* factors, rather than outright precluding those damages as a matter of law.  2016 WL 3545529, at \*26-29.

## CONCLUSION

This Court should reverse the district court's dismissal of Lontex's counterfeiting allegations and the district court's denial of Lontex's request for disgorgement under the Lanham Act.

Dated: February 17, 2023

Respectfully Submitted,

*/s/ Misha Tseytlin*

BEN L. WAGNER (CA 243594)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
11682 El Camino Real, Ste. 400
San Diego, CA 92130
(858) 509-6000
ben.wagner@troutman.com

CRAIG C. CROCKETT (CA 265161)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3 Embarcadero Ctr., Suite 800
San Francisco, CA 94111

MISHA TSEYTLIN (WI 1102199)
*Counsel of Record*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe St., Suite 3900
Chicago, Illinois 60606
(608) 999-1240
misha.tseytlin@troutman.com

MICHAEL A. SCHWARTZ
(PA 60234)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

*Attorneys for Lontex Corp.*

## COMBINED CERTIFICATIONS

I hereby certify that:

1.    At least one of the attorneys whose names appear on the foregoing brief, including the undersigned, is a member of the bar of this Court, as required by Local Rule 28.3(d).

2.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(B), because it contains 6,295 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

3.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in Century Schoolbook size 14 font.

4.    The text of the electronic version of this Brief filed on ECF is identical to the text of the paper copies filed with the Court.

5.    The electronic versions of the Brief and Joint Appendix filed on ECF were virus checked using Windows Defender ATP, version 4.18.2211.5, and no virus was detected.

6.      On this 17th day of February, 2023, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users, and thereafter caused seven copies of the foregoing Brief to be served via United States First Class Mail, on the following:

Clerk's Office
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market St.
Philadelphia, PA 19106-1790

Dated: February 17, 2023

*/s/ Misha Tseytlin*
Misha Tseytlin